IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NUETERRA HEALTHCARE MANAGEMENT, LLC, a Delaware limited liability company; and NUETERRA HOLDINGS, LLC, a Delaware limited liability company; and NUETERRA HOLDINGS MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT PARRY, M.D.; ROBERT COPE, M.D.; SHARON RICHENS, M.D.; JOHN MILLER, M.D.; and DAN NIELSON,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:11-CV-498 TS |

This matter is before the Court on Defendants Scott Parry, M.D.; Robert Cope, M.D.; Sharon Richens, M.D.; and John Miller, M.D.'s (the "Physician Defendants") Motion to Stay[1] and Motion to Dismiss.[2] Also before the Court is Defendant Dan Nielson's ("Defendant

---

[1]Docket No. 13.

[2]Docket No. 15.

Nielson") Motion to Stay[3] and Motion to Dismiss for Failure to State a Claim and (in the alternative) Motion to Dismiss for Lack of Jurisdiction.[4]  For the reasons discussed more fully below, the Court will grant the Physician Defendants' Motion to Stay and deny as moot the Physician Defendants' Motion to Dismiss.  The Court will also deny Defendant Nielson's Motion to Stay and deny without prejudice Defendant Nielson's Motion to Dismiss.

## I.  BACKGROUND

The following allegations are taken from Plaintiffs' Complaint.[5]  Plaintiffs Nueterra Healthcare Management ("NHM"), Nueterra Holdings, LLC ("Nueterra Holdings"), and Nueterra Holdings Management, LLC ("Nueterra Holdings Management"), are Delaware limited liability companies.  The Plaintiffs' respective places of business are located in the state of Kansas.  NHM is a wholly-owned subsidiary of Nueterra Holdings.  The Physician Defendants are members of the Board of Managers of Coral Desert Surgery Center, LLC ("Coral Desert") and each is alleged to be a resident of the state of Utah.  Defendant Nielson is employed by Nueterra Holdings Management and serves as the facility administrator for Coral Desert.  It is alleged that Mr. Nielson is also a Utah resident.

On November 20, 2002, ASC Management, LLC—NHM's predecessor in interest—and Coral Desert entered into a Development and Management Agreement (the "DMA"), pursuant to which NHM was to provide certain management services in exchange for a monthly

---

[3]Docket No. 17.

[4]Docket No. 19.

[5]*See* Docket No. 2.

management fee and a minority ownership in Coral Desert. The monthly management fee to be paid, at the time this dispute arose, was 4.5% of "Net Revenues."[6] This 4.5% fee was subject to an annual cap equal to the total management fee paid in the seventh year of operations. Plaintiffs allege that on or about March 26, 2002, the members of Coral Desert executed and entered into the Operating Agreement of Coral Desert Surgery Center, LLC (the "Operating Agreement"). Plaintiffs further allege that, pursuant to the Operating Agreement, a supermajority vote is required to make any material modification of any material contract of Coral Desert.[7] Plaintiffs assert that since March 2011, the Physician Defendants have attempted to reduce the monthly management fee from 4.5 % to 2 % and to set the annual cap for management fees at $150,000.

As mentioned above, NHM was obligated to perform certain management services under the DMA. For example, the DMA provides that NHM shall: "have the authority and responsibility to provide business development services for [Coral Desert] and to conduct, supervise and direct the day-to-day operations of [Coral Desert]";[8] "establish and administer accounting procedures and controls and establish and administer systems for the development, preparation, and safekeeping of records and books of account relating to the business and finance

---

[6]Net Revenues are defined within the DMA as "the gross revenue of the Center less adjustments for bad debts, contractual adjustments, maximum amounts payable under governmental healthcare programs, and other discounts and allowances as applicable." Docket No. 16-1, at 11.

[7]Plaintiffs assert that the DMA and Operating Agreement are attached to their Complaint, however, the Complaint that was filed with the Court had no attachments. The DMA was provided to the Court as an attachment to the Physician Defendants' Memorandum in Support of Motion to Dismiss and the Court will take judicial notice of the DMA based on its attachment.

[8]Docket No. 2, at 4; *see also* Docket No. 14-1, at 3.

affairs of [Coral Desert]";[9] and "pay the payroll, rent, trade accounts, amounts due on short and long-term indebtedness, taxes and all other obligations of Owner arising out of the operation of [Coral Desert]."[10] Plaintiffs also allege that the DMA provides that the books of accounting shall be kept and maintained at the offices of NHM.[11]

According to Plaintiffs, the Physician Defendants improperly impeded or reduced NHM's responsibilities under the DMA by ceasing to use NHM's "Great Plains" accounting software program; withdrawing NHM's authority to sign checks and make payments on Coral Desert's behalf; using a different accounting software system; and using Defendants' own checks to pay Coral Desert's obligations.

Plaintiffs also allege that the Physician Defendants interfered with Plaintiffs' employment relationship with Defendant Nielson. Defendant Nielson is the current facility administrator, a position provided for under the DMA. Plaintiffs allege that, pursuant to the DMA, the facility administrator serves at NHM's sole discretion. Plaintiffs further allege that the Physician Defendants induced Defendant Nielson to eliminate NHM's signing authority on Coral Desert's bank accounts, to add Defendant Nielson's own name as an account signatory, and to change the accounting processes for Coral Desert.

Plaintiffs also allege that, through his actions in eliminating NHM's signing authority on Coral Desert's bank accounts and adding his own name as account signatory, and refusing to

---

[9]Docket No. 2, at 4; *see also* Docket No. 14-1, at 4.

[10]Docket No. 2, at 4; *see also* Docket No. 14-1, at 5.

[11]Docket No. 2, at 4.

take direction from NHM and Nueterra Holdings Management, Defendant Nielson has breached his employment agreement with Nueterra Holdings Management.

## II.  DISCUSSION

The Physician Defendants have brought a Motion to Stay,[12] requesting a stay of this litigation pending the conclusion of arbitration pursuant to the Federal Arbitration Act ("FAA"). Defendant Nielson has also filed a Motion to Stay[13] and joins in the briefing submitted by the Physician Defendants, arguing that his Motion should be granted on the same grounds.  In the alternative, the Physician Defendants and Defendant Nielson have also filed Motions to Dismiss.[14]  The Court will address each of Defendants' motions in turn.

A.      MOTIONS TO STAY

Defendants assert that this litigation should be stayed pending arbitration under § 3 of the FAA because the DMA contains a binding arbitration clause.  Plaintiffs argue that the arbitration clause does not apply because the Physician Defendants, Nueterra Holdings, and Nueterra Holdings Management are not signatories to the DMA.  Defendants do not dispute that the above listed parties are not signatories to the DMA, but assert that under the relevant case law the arbitration clause should still be enforced.

---

[12]Docket No. 13.

[13]Docket No. 17.

[14]Docket Nos. 15 & 19.

There is a "strong federal policy in favor of enforcing arbitration agreements,"[15] and, as asserted by the Defendants, "[s]ection 3 of the [FAA] entitles litigants in federal court to a stay of any action that is referable to arbitration under an agreement in writing."[16] In determining whether a stay is appropriate, the Court will begin its review with the language of the arbitration clause contained in the DMA.

Section 12.14 of the DMA provides as follows:

Arbitration. Any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof, which has not been resolved by agreement among the Members within 30 days of all Members receiving notice of such dispute shall be finally settled by arbitration . . . . The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16 . . . .[17]

The Tenth Circuit has previously found that an arbitration clause that "provides that any controversy, claim, or breach *arising out of or relating to* this [a]greement shall be arbitrable," is a broad arbitration clause.[18] Under a broad arbitration clause, "all claims with 'a significant relationship to the [a]greement, regardless of the label attached' to them, arise out of and are related to the [a]greement."[19] Tort based claims such as tortious interference are subject to an

---

[15] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

[16] *Arthur Andersen LLP v. Carlisle,* 129 S. Ct. 1896, 1899 (2009).

[17] Docket No. 14-1, at 20-21.

[18] *P&P Indus., Inc. v. Sutter Corp*., 179 F.3d 861, 871 (10th Cir. 1999) (emphasis in original) (internal citations and quotation marks omitted).

[19] *Id*. (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc*., 96 F.3d 88, 93 (4th Cir. 1993)).

arbitration clause where such claims arise out of, or relate to, the underlying agreement.[20] As the Tenth Circuit recently held, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."[21]

Here, Plaintiffs do not dispute that the arbitration clause included in the DMA is a broad arbitration clause and that under such an agreement all claims that arise out of, or relate to, the DMA should be referred to arbitration.[22] Instead, Plaintiffs argue that this matter should not be referred to arbitration because the parties to this action never actually agreed to arbitrate their disputes.

In *Howsam v. Dean Witter Reynolds, Inc.*,[23] the United States Supreme Court instructed that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."[24] The same case instructs that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[25]

---

[20]*See id.*; *see also Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 284 (11th Cir. 1996) (holding that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted").

[21]*Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010) (internal quotation marks and citation omitted).

[22]*See* Docket No. 24, at 2.

[23]537 U.S. 79 (2002).

[24]*Id.* at 84.

[25]*Id.* at 83.

The Supreme Court has also addressed the issue of whether "litigants who were not parties to the relevant arbitration agreement" can seek a stay under the FAA.[26] Similar to the Plaintiffs in this matter, respondents in the Supreme Court case of *Arthur Andersen LLP v. Carlisle* argued that "as a matter of federal law, claims to arbitration by nonparties are not referable to arbitration *under* an agreement in writing, because they seek to bind a signatory to an arbitral obligation beyond that signatory's strictly contractual obligation to arbitrate."[27] The Supreme Court refused to adopt this argument, reasoning that "[p]erhaps that would be true if the [FAA] mandated stays only for disputes between parties to a written arbitration agreement."[28] The Supreme Court went on to hold "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled."[29]

In the instant action, neither the Physician Defendants, Defendant Nielson, Nueterra Holdings Management, nor Nueterra Holdings are signatories to the DMA. However, Defendants assert that the arbitration clause is still binding under the precedent set out by the Supreme Court in *Arthur Andersen*. The issue before the Court is whether under Utah law the Defendants and the nonsignatory Nueterra entities may enforce, or be bound by, the arbitration

---

[26]*Arthur Andersen*, 129 S. Ct. at 1899.

[27]*Id*. at 1902 (emphasis in original) (internal quotation marks and citations omitted).

[28]*Id.* (noting that "[the FAA] says that stays are required if the claims are referable to arbitration under an agreement in writing").

[29]*Id*.

agreement as contained in the DMA. The Court will address the application of Utah law to the nonsignatory parties individually.

    1.          PHYSICIAN DEFENDANTS

The Physician Defendants argue that, even though they are nonsignatory third parties, they can enforce the arbitration agreement under Utah law because they are agents for Coral Desert, a signatory to the DMA. Plaintiffs contend that the Physician Defendants cannot enforce the arbitration clause because, under Utah law, agents cannot seek to benefit from the contracts of their principal.

The Utah Supreme Court dealt with the application of arbitration clauses to nonsignatories in the case of *Ellsworth v. American Arbitration Association*.[30] In that case, the court recognized that, "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties."[31] The court went on to state that "[t]raditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel."[32]

The Physician Defendants argue that, as the Board of Managers of Coral Desert, they qualify as agents of Coral Desert and should be allowed to enforce the arbitration agreement even as a nonsignatory. Plaintiffs do not dispute that the Physician Defendants are agents for

---

[30] 148 P.3d 983 (Utah 2006).

[31] *Id*. at 989.

[32] *Id*.

Coral Desert, instead arguing that under Utah law it "is clear that the Physician Defendants are not allowed to benefit from Coral Desert's contractual provisions simply by virtue of their agency relationship with Coral Desert."[33]  In support of this argument, Plaintiffs cite to *Fericks v. Lucy Ann Soffe Trust*,[34] in which the Utah Supreme Court held that "one of the most basic principles of contract law is that, as a general rule, only parties to the contact may enforce the rights and obligations created by the contract"[35] and "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit."[36]

At first blush, the *Fericks* case would seem to be in direct contravention to the Utah Supreme Court's later holding in *Ellsworth*.[37]  However, these cases can be read in harmony if they are interpreted to stand for the proposition that the five theories for binding a nonsignatory to an arbitration agreement are exceptions to the general rule stated in *Fericks*.  The Court is persuaded that this is the appropriate reading of these cases.  "[T]o hold otherwise would make it

---

[33]Docket No. 32, at 5.

[34]100 P.3d 1200 (2004).

[35]*Id*. at 1205-06.

[36]*Id*. at 1206.

[37]In *Ellsworth*, the Utah Supreme Court applied the agency theory for binding a nonsignatory but ultimately found that the theory did not apply because there was no evidence that the nonsignatory party was an agent.  *See* 148 P.3d at 989.

'too easy to circumvent [arbitration] agreements by naming individuals as defendants instead of the [signatory] entity [itself].'"[38]

Lastly, though not argued by the parties, this Court notes that the Physician Defendants would also be allowed to enforce the arbitration agreement against NHM under a theory of nonsignatory estoppel. In *Ellsworth*, the Utah Supreme Court recognized that "another variety of nonsignatory estoppel is that enforced by a nonsignatory when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."[39] Here, NHM—a signatory—is estopped from avoiding the arbitration clause contained in the DMA by relying on the fact that the Physician Defendants are nonsignatories to the DMA.

For both of the reasons provided above, the Court will allow the Physician Defendants to enforce the arbitration agreement contained in the DMA.

2.   NUETERRA HOLDINGS

Plaintiffs also assert that the arbitration agreement does not apply because Nueterra Holdings is not a signatory to the DMA. The Physician Defendants concede that Nueterra

---

[38]*Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*, 2004 WL 2471372, at *4 (S.D. N.Y. Nov. 3, 2004) (alterations in original) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993)).

[39]*Ellsworth*, 148 P.3d at 989 (citing *Bridas S.A.P.I.C. v. Gov't. of Turkmenistan*, 345 F.3d 347, 360-61 (5th Cir. 2003) (holding that "[t]he Plaintiff cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory)).

Holdings is not a signatory to the DMA but assert that as the parent company of NHM, Nueterra Holdings's claims are inherently inseparable from those of NHM.

This Court, in *I-Link Inc. v. Red Cube International AG*,[40] concluded that where the relationship between a parent and subsidiary were "sufficiently close" and the claims "sufficiently intertwined" with the relevant agreement, the nonsignatory parent would be bound by the arbitration agreement.[41] In *I-Link*, this Court cited favorably to the holding of *International Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, where the Fourth Circuit held that "'[w]hen allegations against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'"[42] Other courts have held that "[a] nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a direct benefit from a contract containing an arbitration clause.'"[43]

In considering this type of estoppel, the Utah Supreme Court noted that "[i]n cases where estoppel has been implemented *against a nonsignatory*, the nonsignatory has sued a signatory on the contract to his benefit but sought to avoid the arbitration provision of the same contract."[44]

---

[40] 2001 WL 741315 (D. Utah Feb. 5, 2001).

[41] *Id.* at *5.

[42] *Id.* (quoting *Int'l Paper Co., v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000).

[43] *Ellsworth*, 148 P.3d at 989 (quoting *Am. Bureau of Shipping v. Tecara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)).

[44] *Id.*

12

In considering nonsignatory estoppel in *Ellsworth*, the court reasoned that the "nonsignatory estoppel exception [did] not apply to Mr. Ellsworth, a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract."[45]

Nueterra Holdings only alleges two causes of action against the Physician Defendants. Plaintiffs' sixth and eighth causes of action both allege that the Physician Defendants sought the ouster of Nueterra Holdings as a minority member of Coral Desert. Nueterra Holdings alleges the Physician Defendants sought to bring about this ouster by "among other things, attempting to manufacture 'cause' to terminate the DMA."[46] According to Plaintiffs, this termination of the DMA "would ultimately result in the ouster of Nueterra Holdings as minority member of Coral Desert."[47]

The relationship between Nueterra Holdings and NHM is "close." NHM is a wholly owned subsidiary of Nueterra Holdings. Nueterra Holdings and NHM's claims are also "intertwined" with the DMA. Nueterra Holdings is suing on the DMA and alleges that its rights are being affected by the Physician Defendants' efforts to terminate the DMA. Nueterra Holdings claims are based on the DMA and NHM's success in enforcing its rights under the DMA. NHM is bound by the arbitration agreement. For these reasons, this Court finds that Nuettera Holdings has manifested an intent to be bound by the DMA, which it now seeks to

---

[45]*Id.*

[46]Docket No. 2, at 10.

[47]*Id.*

13

enforce. Therefore, the Court will refer any claim by Nueterra Holdings against the Physician Defendants to arbitration with NHM.

### 3. NUETERRA HOLDINGS MANAGEMENT

The Defendants assert that Nueterra Holdings Management's claims should be stayed pending arbitration because Nuterra Holdings Management's claims are directly related to and contingent upon NHM's claims. Plaintiffs assert that Nueterra Holdings Management cannot be bound by the arbitration agreement because it is a nonsignatory sister company to NHM and does not receive any direct benefit under the DMA.

"A corporation is entitled to a presumption of separateness from a sister corporation even if both are controlled by the same individuals."[48] Thus, for Nueterra Holdings Management to be bound with NHM to the DMA, its relationship with NHM must be sufficient to overcome that presumption.[49] This presumption may be overcome where the claims "involve the same misconduct as that alleged against [the] signatory and arise out of [the] contract containing [the] arbitration provision."[50]

---

[48]*Cade v. Zions First Nat'l. Bank*, 956 P.2d 1073, 1077 (Utah Ct. App. 1998).

[49]*See id.*

[50]*Id.* (citing *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121-22 (3d Cir. 1993) (holding that arbitration agreement applied to nonsignatory sister corporation that acted as advisor to signatory sister corporation and that allegedly participated knowingly in breaches of fiduciary duties; nonsignatory sister corporation's interests were directly related to, if not predicated upon, signatory sister corporation's conduct)); *see also Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3d Cir. 1985) (holding that non-parties to the arbitration agreement that have related and congruent interests with the principals to the litigation would be required to arbitrate).

The majority of Nueterra Holdings Management's claims are against Defendant Nielson. Those claims are allegedly partially premised on a separate employment agreement with Defendant Nielson. However, in their first claim for relief, Plaintiffs also allege that the Physician Defendants:

> improperly induced the facility administrator, Defendant Nielson, to breach his fiduciary duty and duty of loyalty to NHM and Nueterra Holdings Management by corrupting his loyalty to his employer and inducing him to take actions that are not in the best interest of NHM and Nueterra Holdings Management and that impede or prevent NHM from performing its duties under the DMA.[51]

In their second claim for relief, Plaintiffs allege that the Physician Defendants:

> intentionally interfered with the employment and economic relations between or among Defendant Nielson, NHM and Nueterra Holdings Management, by corrupting his loyalty to his employer and NHM and inducing him to take actions that are not in the best interest of NHM and Nueterra Holdings Management and that impede or prevent NHM from performing its duties under the DMA.[52]

These claims contain a variation of the same allegation. Nueterra Holdings Management alleges that the Physician Defendants impeded its rights by causing its employee, Defendant Nielson, to take actions that impeded NHM's rights under the DMA.

The Court find that these allegations involve the same misconduct as that complained of by the signatory, NHM, and arise out of the DMA. Thus, they are subject to arbitration. Moreover, the Court notes that, as against the Physician Defendants, NHM and Nueterra Holdings Management have related and congruent interests with regard to the litigation.

---

[51]Docket No. 2, at 6.

[52]*Id*. at 7.

15

Nueterra Holdings Management's claims against the Physician Defendants are directly related to, if not predicated upon, NHM's rights under the DMA.

Therefore, to the extent Nueterra Holdings Management alleges a claim against the Physician Defendants, Nueterra Holdings Management will be bound to arbitrate with NHM because there are sufficient facts to overcome the presumption of corporate identity separation among sister companies.

4. DEFENDANT NIELSON

Defendant Nielson asserts that "[t]he reasons set forth in the Physician Defendant's briefing calls for a stay of this entire action, including Plaintiffs' claims against [Defendant] Nielson, pending mandatory arbitration."[53] Plaintiffs assert that Defendant Nielson's Motion to Stay fails because he is not a signatory to the DMA and cannot enforce the arbitration clause.

Defendant Nielson's Motion fails on several grounds. First, Plaintiffs' Complaint does not merely allege claims against Defendant Nielson under the DMA. Nueterra Holdings Management also alleges that it has a valid and binding employment agreement with Defendant Nielson that he has breached by refusing to take directives from NHM.

Moreover, Plaintiffs correctly assert that Defendant Nielson is not a signatory to the DMA. Nor has Defendant Nielson argued that any of the five theories provided in *Ellsworth* allow him to enforce the arbitration clause. For these reasons, the Court will deny Defendant Nielson's Motion to Stay.

---

[53]Docket No. 18, at 2.

16

B.      MOTIONS TO DISMISS

The Physician Defendants move this Court to dismiss Plaintiffs' Complaint under Fed.R.Civ.P. 12(b)(6) and 12(b)(1).  The Court will deny the Physician Defendants' Motions to Dismiss as moot per the Court's grant of the Physician Defendants' Motion to Stay.  Defendant Nielson has also sought dismissal of Plaintiffs' Complaint.  Similar to his Motion to Stay, Defendant Nielson merely joins in the briefing filed by the Physician Defendants.  The Court will deny Defendant Nielson's Motion to Dismiss without prejudice.  The Court will allow Defendant Nielson an opportunity to file a properly supported motion to dismiss for the Court's consideration.

### III.  CONCLUSION

It is therefore

ORDERED that the Physician Defendants' Motion to Stay (Docket No. 13) is GRANTED.  It is further

ORDERED that the Physician Defendants' Motions to Dismiss (Docket No. 15) is DENIED AS MOOT.  It is further

ORDERED that Defendant Nielson's Motion to Stay (Docket No. 17) is DENIED.  It is further

ORDERED that Defendant Nielson's Motion to Dismiss for Failure to State a Claim and (in the alternative) Motion to Dismiss for Lack of Jurisdiction (Docket No. 19) is DENIED WITHOUT PREJUDICE.

DATED December 16, 2011.

BY THE COURT:

_____

TED STEWART
United States District Judge