IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NUETERRA HEALTHCARE MANAGEMENT, LLC, a Delaware limited liability company; and NUETERRA HOLDINGS, LLC, a Delaware limited liability company; and NUETERRA HOLDINGS MANAGEMENT, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br><br><br> vs. <br><br><br> SCOTT PARRY, M.D.; ROBERT COPE, M.D.; SHARON RICHENS, M.D.; JOHN MILLER, M.D.; and DAN NIELSON, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS OR ALTERNATIVELY FOR STAY PENDING ARBITRATION <br><br><br><br><br><br> Case No. 2:11-CV-498 TS |

This matter is before the Court on Defendant Dan Nielson's Motion to Dismiss or Alternatively for Stay Pending Arbitration.[1]  For the reasons discussed more fully below, the Court will deny Defendant Nielson's Motion to Dismiss and grant his Motion to Stay.

---

[1]Docket No. 34.

## I.  BACKGROUND

The Plaintiffs in this case are Nueterra Healthcare Management ("NHM"), Nueterra Holdings, LLC ("Nueterra Holdings"), and Nueterra Holdings Management, LLC ("Nueterra Holdings Management").  NHM is a management and development company that partners with physician-owned businesses to operate surgical facilities.  Coral Desert Surgery Center, LLC ("Coral Desert") is a primarily physician-owned business that operates in St. George, Utah.

On November 20, 2002, ASC Management, LLC—NHM's predecessor in interest—and Coral Desert entered into a Development and Management Agreement (the "DMA"), pursuant to which NHM was to provide certain management services in exchange for a monthly management fee.  Pursuant to the assignment of the DMA, Nueterra Holdings—NHM's parent company—allegedly received a minority interest in Coral Desert.  Defendant Nielson is employed by Nueterra Holdings Management—a sister company to NHM—and serves as the facility administrator for Coral Desert.[2]

The facility administrator is a position provided for under the DMA.  In their Complaint, Plaintiffs allege that, pursuant to the DMA, the facility administrator serves at NHM's sole discretion.  Plaintiffs also allege that Defendant Nielson took certain actions that were detrimental to the interest of NHM and Nueterra Holdings.  Specifically, Plaintiffs allege that Defendant Nielson eliminated NHM's signatory authority on Coral Desert's bank accounts,

---

[2]Defendant Nielson is alleged to have entered into a separate employment agreement with Nueterra Holdings Management.  Plaintiffs assert that this employment agreement is attached as an exhibit to their Complaint.  The Court would note that Plaintiffs' Complaint contains no exhibits and this Court has not otherwise received a copy of the above referenced employment agreement.

added his own name as an account signatory, and changed the accounting processes for Coral

Desert.  Plaintiffs further allege that Defendant Nielson has refused to take direction from NHM

and Nueterra Holdings Management.

Based on these allegations, Plaintiffs bring the following causes of action against

Defendant Nielson: (1) breach of fiduciary duty and duty of loyalty; (2) breach of employment

agreement; (3) intentional interference with economic relations; and (4) civil conspiracy.

In its December 16, 2011, Memorandum Decision and Order ("the Order"), this Court

granted Defendant Nielson's co-defendants'—Scott Parry, M.D., Robert Cope, M.D., Sharon

Richens, M.D., and John Miller, M.D.—Motion to Stay.  The Court granted the Motion to Stay

because it found that Plaintiffs' claims against the co-defendants all arose out of the DMA, which

contained a binding arbitration agreement.

In its Order, the Court denied Defendant Nielson's previously filed Motion to Dismiss

and Motion to Stay without prejudice and granted him leave to file a properly supported motion

to dismiss for the Court's consideration.  On January 6, 2012, Defendant Nielson filed the instant

Motion.

II.  DISCUSSION

Through his Motion, Defendant Nielson moves the Court "to dismiss all claims against

him in this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6) or alternatively to stay pending

arbitration."[3]  Defendant Nielson's arguments for dismissal will each be addressed in turn.[4]

_____

[3]Docket No. 34, at 1.  Defendant Nielson asserts in his Motion that he is seeking
dismissal under Rule 12(b)(6).  However, in his Memorandum in support of this Motion,
Defendant Nielson does not address dismissal under Rule 12(b)(6).  Therefore, the Court will not

A.      MOTION TO DISMISS

The central theme of Defendant Nielson's Motion to Dismiss is that this Court lacks

subject matter jurisdiction.  Defendant Nielson asserts that this Court is without subject matter

jurisdiction because (1) Plaintiffs fail to adequately allege an amount in controversy in excess of

$75,000 and (2) Plaintiffs' allegations are theoretical because said allegations are contingent

upon the outcome of claims that the Court has ordered be arbitrated.

1.      AMOUNT IN CONTROVERSY

"The rule governing dismissal for want of jurisdiction in federal court is that, unless the

law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently

made in good faith."[5]  "When federal subject matter jurisdiction is challenged based on the

amount in controversy requirement, the plaintiffs must show that it does not appear to a legal

certainty that they cannot recover at least $[75,000]."[6]  "Although allegations in the complaint

need not be specific or technical in nature, sufficient facts must be alleged to convince the []

---

address the issue of whether Plaintiffs' claims against Defendant Nielson "state a claim upon
which relief can be granted."

[4]As a threshold matter, the Court will decline to dismiss Defendant Nielson's Motion and
enter default judgment for Plaintiffs based on Defendant Nielson's alleged untimeliness in filing
this Motion.  The Court finds that Fed. R. Civ. P. 12(a)(4)(A) is not applicable because a motion
to dismiss is not a responsive pleading.  *See Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119,
1131 (10th Cir. 1994).  Furthermore, the Court finds that Plaintiffs were not prejudiced by
Defendant Nielson's filing his Motion twenty-one days after this Court's previous Order
allowing such filing.

[5]*Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (citing
*St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

[6]*Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994).

court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor."[7]

Here, Defendant Nielson has not demonstrated that Plaintiffs' claimed damages are not made in good faith. Plaintiffs seek recovery under theories of breach of contract and tort. Plaintiffs' claims involve a potential cap to NHM's monthly management fee, resulting in a loss potentially greater than $75,000. Furthermore, Plaintiffs have sought punitive damages for each of its tort claims. Taking into consideration that "[t]he legal certainty standard is very strict,"[8] and given the possible recovery on each of Plaintiffs' claims, the Court finds that it is not a legal certainty that Plaintiffs cannot recover greater than $75,000 through the allegations contained in their Complaint. The Court therefore finds that Plaintiffs' alleged amount of damages—greater than $75,000—provides sufficient basis to invoke this Court's jurisdiction.

2.    CONTINGENCY OF CLAIMS

Defendant Nielson asserts that Plaintiffs' allegations against him are "theoretical because such damages are secondary to NHM's arbitrable breach of contract claim against Coral Desert" and "[a]ny possible or theoretical liability [] under his separate employment contract is at best contingent and may never arise depending upon the outcome of the arbitration."[9] Defendant

---

[7]*State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1272 (10th Cir. 1998) (internal citation and quotations omitted).

[8]*Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir. 2003) (noting that "[c]ertainty is defined as: 'absence of doubt; accuracy; precision; definite. The quality of being specific, accurate, and distinct.'") (quoting BLACK'S LAW DICTIONARY 225 (6th ed. 1990)).

[9]Docket No. 35, at 2.

Nielson argues that because the damages alleged against him are contingent in nature, said damages cannot be included in determining the amount in controversy.

"Future claims and demands which are contingent in nature and may never accrue cannot, as a rule, be included in determining the amount in controversy."[10]  "Thus, when a federal court's diversity jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment."[11]

Here, Defendant Nielson argues that Plaintiffs' allegations create only a contingent possibility of personal liability for Defendant Nielson secondary to an alleged primary responsibility of Coral Desert.  According to Defendant Nielson, damages against him will accrue, if at all, only after the arbitration is complete and Plaintiffs do not obtain a full recovery from Coral Desert under the DMA.  The Court is not persuaded that such is the case.

Plaintiffs have brought claims against Defendant Nielson for breach of fiduciary duty and duty of loyalty, breach of employment agreement, and intentional interference with economic relations.  Should Plaintiffs prove any one of these claims, such recovery would be in addition to any amounts Plaintiffs receive for breach of the DMA.  While Defendant Nielson's actions—in conjunction with the actions of his co-defendants—may constitute a violation of the DMA, the

---

[10]32A Am. Jur. 2d Fed. Courts § 994 (2012) (citing *Bhd. of Locomotive Firemen & Enginemen v. Pinkston*, 293 U.S. 96 (1934)).

[11]*Id*. (citing *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932 (S.D. W.Va. 1996)).

same actions could give rise to damages under Defendant Nielson's separate employment agreement and the alleged breach of his duties as an employee.

Therefore, the Court finds that Plaintiffs' claims are not secondary or contingent in nature.  As such, the Court will deny Defendant Nielson's Motion to Dismiss on these grounds.

B.      MOTION TO STAY

Defendant Nielson asserts that, in the event the Court denies his Motion to Dismiss, it should enter a discretionary stay of the claims against him.  According to Defendant Nielson, such a stay is merited because (1) under *Ellsworth v. American Aribtration Association*,[12] NHM—a signatory to the DMA—should be estopped from claiming that its recovery against Defendant Nielson is not subject to arbitration and (2) the arbitrable claims in this action predominate over the non-arbitrable claims.

1.      NHM

For the same reasons provided by the Court in its previous Order,[13] the Court finds that, to the extent NHM seeks to maintain a claim against Defendant Nielson based on the DMA, such claim or claims are subject to the arbitration provision of the DMA.  On this point, the Court notes that each of Plaintiffs' causes of action against Defendant Nielson contain language implying that Defendant Nielson owed a duty or duties to NHM as its "on-site facility

---

[12]148 P.3d 983 (Utah 2006).

[13]*See* Docket No. 33, at 5-11.

7

administrator at Coral Desert."[14]   The "duties" of the on-site facility administrator are provided

under the terms of the DMA.

      2.     REMAINING CLAIMS

     As the Court noted in its previous Order, "Plaintiffs' Complaint does not merely allege

claims against Defendant Nielson under the DMA.  Nueterra Holdings Management also alleges

that is has a valid and binding employment agreement with Defendant Nielson that he has

breached by refusing to take directives from NHM."[15]  Thus, the issue before the Court is

whether such claims should also be stayed pending arbitration of the claims that arise under the

DMA.

     In *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*,[16] the Tenth Circuit

reversed a district court's blanket finding that a plaintiff's claims were not subject to an

arbitration clause.[17]  On remand, the *Riley* court instructed the district court to "review [the

plaintiff's] pleadings and the positions of the parties to determine which of those claims in [the

plaintiff's] suit . . . are not eligible for arbitration."[18]  In doing so, the district court was to look at

"whether the factual support for these claims arises under the Manufacturing Agreement."[19]  "In

---

[14]Docket No. 2, at 8.

[15]Docket No. 33, at 16.

[16]157 F.3d 775 (10th Cir. 1998).

[17]*Id.* at 785.

[18]*Id.*

[19]*Id.*  In *Riley*, the claims were arbitrable if they arose under the manufacturing agreement
and did not relate to the subject matter of the settlement agreement.  The manufacturing

conducting this review, the district court must bear in mind the rule that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[20]

The *Riley* court further instructed that:

> After conducting this review of [plaintiff's] claims, the district court also should make an additional determination of whether a resolution of [plaintiff's] arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to litigation.  If there will be such a preclusive effect, especially if the arbitrable claims predominate over the nonarbitrable claims, then the district court should consider whether to stay the federal-court litigation of the nonarbitrable claims pending the arbitration outcome on the arbitrable claims.[21]

However, "the mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [plaintiff's] entire case."[22]

In the instant case, there is a strong argument that the factual support for Nueterra Holdings Management's claims against Defendant Nielson arise under the DMA, even though they are premised on a separate employment agreement.  As noted previously, the actions by Defendant Nielson that Nueterra Holdings Management claims constitute a breach of the employment agreement also are alleged to constitute a breach of the DMA by NHM and Nueterra

---

agreement contained a binding arbitration clause, however, the subsequent settlement agreement waived arbitration on certain claims.  Admittedly, this is a distinct factual scenario to that presented to the Court in the instant case, nevertheless, the analysis to be performed is the same.

[20]*Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (1983)).

[21]*Id*. (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987)).

[22]*Id*. (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517 (10th Cir. 1995) (holding that "litigation must proceed in a 'piecemeal' fashion if the parties intended that some matters, but not others, be arbitrated)).

Holdings.  Furthermore, the Court is persuaded that the arbitrable claims predominate over the nonarbitrable claims.

In sum, the Court will grant a discretionary stay of Nueterra Holdings Managment's claims against Defendant Nielson pending arbitration of all claims that arise under the DMA.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant Nielson's Motion to Dismiss or Alternatively for Stay Pending Arbitration (Docket No. 34) is GRANTED IN PART AND DENIED IN PART.  The hearing currently scheduled in this matter for Thursday, April 5, 2012, at 3:30 pm is hereby STRICKEN.  The Clerk of Court is instructed to administratively close this case.  Either party may seek to reopen this case once arbitration is complete.

DATED   April 3, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge